37 N.J. Super. 117 (1955)
117 A.2d 42
J. KENDRICK JOHNSON, JR., TRADING AS THE HUNTERDON ADJUSTMENT SERVICE, PLAINTIFF-APPELLANT,
v.
DONALD ANDERSON AND ALLEN M. COTTRELL, T/A THE COTTRELL-ANDERSON PONTIAC CO., AND THE GENERAL MOTORS ACCEPTANCE CORPORATION, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 27, 1955.
Decided October 5, 1955.
*118 Before Judges CLAPP, JAYNE and FRANCIS.
*119 Mr. Franklin W. Kielb argued the cause for plaintiff-appellant.
Mr. Charles Blume argued the cause for defendants-respondents (Messrs. Chivian & Chivian, attorneys).
The opinion of the court was delivered by CLAPP, S.J.A.D.
This appeal raises a question as to the proper construction of a section of the Uniform Conditional Sales Law.
The defendants Donald Anderson and Allen M. Cottrell, trading as The Cottrell-Anderson Pontiac Co., sold Wayne Blodgett a car pursuant to a conditional sales contract which stated that the sale was made:

"For a Total Time Price * * * $1644.90
 Computed as follows:
 1. Cash Sale Delivered Price * * * $1445.00
 2. Total Down Payment * * * $ 645.00
 3. Unpaid Cash Price Balance * * * $ 800.00
 4. Cost of Car Insurance * * * $ 99.00
 5. Other Charges * * * $ ______
 6. Principal Balance * * * $ 899.00
 7. Finance Charge (Including Charge for Group $ 100.90
 Creditor Insurance $4.75) $ 100.90
 8. Time (Deferred) Balance * * * $ 999.90
 Payable at office of General Motors Acceptance
Corporation to be hereafter designated in 18 installments
of _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ $ 55.55
each, commencing May 13th, 1954, and on the same
day of each successive month thereafter * * *."

Mr. Blodgett made two payments of $55.55 and then defaulted. The car was repossessed by the defendant, the General Motors Acceptance Corporation, the assignee of the contract, which resold it at a private sale. N.J.S.A. 46:32-25 by its terms requires a "public auction," not a private sale, where "at least fifty per cent of the purchase price at the time of retaking" has been paid for the car.
The plaintiff's claim is that because the car was sold at a private sale contrary to the terms of N.J.S.A. 46:32-25, *120 defendant became liable under N.J.S.A. 46:32-31 for damages and in no event for less than one-fourth of all payments made under the contract. Mr. Blodgett assigned this claim to plaintiff, and plaintiff brought the present action to recover on it. Whether such a claim, created by N.J.S.A. 46:32-32, is assignable, has not been argued, and we therefore do not deal with the point. See Van Pelt v. Schauble, 68 N.J.L. 638, 640 (E. & A. 1903); N.J.S.A. 2A:25-1; East Orange Lumber Co. v. Feiganspan, 120 N.J.L. 410 (Sup. Ct. 1938), affirmed 124 N.J.L. 127 (E. & A. 1940).
Defendants secured summary judgment below. Plaintiff appeals.
The question here is whether Blodgett had paid "fifty per cent of the purchase price" (N.J.S.A. 46:32-25). The two payments of $55.55, added to the down payment of $645 (the $645 item was in fact an allowance given to Mr. Blodgett on the trade-in of his old car), total $756.10. This is more than 50% of the "cash sale delivered price" of $1,445, but less than 50% of the "total time price" of $1,644.90. Which is the "purchase price" within the intendment of N.J.S.A. 46:32-25? Plaintiff's contention is that the finance charges and cost of insurance are not part of the purchase price.
It might be observed, in passing, that if the two payments of $55.55 are each applicable first to finance and insurance charges due at the time of these payments (see Long v. Republic Varnish Enamel, etc., Co., 115 N.J. Eq. 212, 216 (E. & A. 1933) and Morland Mortgage Co. v. Mt. Lebanon Cemetery Ass'n, 18 N.J. Super. 78, 81 (App. Div. 1952)), the balance of those two payments, added to the down payment of $645, may possibly be less than 50% of even the "cash sale delivered price." It might be noticed, too, that plaintiff wants us to hold that finance and insurance charges are to be excluded from the purchase price; and on the other hand he wants to obtain the benefit of amounts paid on those charges, by having such payments allocated entirely to the cash sale delivered price. However, these points are not raised by counsel, and we do not deal with them since we have no means of knowing from this record what portion of *121 each payment of $55.55 is allocable to such charges, and what portion is allocable to the cash sale delivered price.
We are satisfied that not infrequently in connection with an installment sale, the word "price" has reference to the "time price." Thus we find it to be common knowledge that the price of articles bought on the installment plan is more than the price of the same when bought for cash. Lo Bosco v. Resnitzky, 120 N.J.L. 495, 496 (Sup. Ct. 1938). We find, too, a statute regulating retail installment contracts, which requires a statement in or accompanying such a contract separately itemizing the "cash price," the insurance cost to the retailer, the "time price differential," etc. N.J.S.A. 17:16B-6(b). Two of these items are defined in N.J.S.A. 17:16B-1:
"(f) Cash price means the total amount in dollars at which the seller and buyer agree the seller would transfer unqualified title to the goods, if the transaction were a cash sale instead of a sale under a retail installment contract. [Italics inserted.]
"(g) Time price differential means the amount in excess of the cash price of the goods agreed upon by the retail seller and the retail buyer, to be paid by the retail buyer for the privilege of purchasing the goods under the retail installment contract."
We find also a number of authorities in other jurisdictions indicating that the import of the term "purchase price" on an installment sale is such that it comprises the finance charges. Berman's Jewelry Store, Inc., v. United States, 198 F.2d 675, 677, 33 A.L.R.2d 1445 (4th Cir., 1952); Harper v. Futrell, 204 Ark. 822, 164 S.W.2d 995, 996, 143 A.L.R. 235 (Sup. Ct. 1942); Zazzaro v. Colonial Acceptance Corporation, 117 Conn. 251, 167 A. 734 (Sup. Ct. Err. 1933); Equitable Credit & Discount Co. v. Geier, 342 Pa. 445, 21 A.2d 53, 58 (Sup. Ct. 1941); 143 A.L.R. 251; cf. 91 C.J.S., Usury, § 18b.
However, the question whether the time price is to be regarded as the purchase price for all purposes, is of course not before us. Our question is whether it is so to be regarded for the purposes of N.J.S.A. 46:32-25. The statute deals with the situation where "the buyer has paid at least fifty *122 per cent of the purchase price at the time of retaking." It would seem fairly clear that the statute has reference here to the price agreed upon by the parties  the price which the buyer was to pay off on an installment basis. The price agreed upon on the making of this deal  the price being paid off  was the time price; the cash sale delivered price was merely stated informationally so as to disclose frankly the extent of the insurance and finance charges. It follows that the statute refers here to the time price. Ellner v. Commercial Credit Corp., 136 Misc. 398, 240 N.Y.S. 832 (City Ct. 1930). It may be noted that the Uniform Commercial Code, sec. 9-505, applicable in somewhat analogous circumstances, provides for certain relief when "60% of the cash price" has been paid.
Since Mr. Blodgett paid less than 50% of the time price, a public auction was not necessary, and plaintiff has no cause of action under N.J.S.A. 46:32-31.
Affirmed.